In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2417

UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

*v.*

MARCOS ESTRADA-MEDEROS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 833—**James F. Holderman**, *Judge*.

ARGUED FEBRUARY 12, 2015 — DECIDED APRIL 29, 2015

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Defendant Marcos Estrada-Mederos pled guilty to illegal reentry for being found in the United States after having been previously deported following conviction for an aggravated felony. See 8 U.S.C. § 1326. He was given a within-guideline sentence

of 57 months in prison. He appeals his sentence, challenging the district court's failure to address his principal arguments for mitigation. We reverse and remand because one of his three arguments for mitigation had recognized legal merit, and we cannot conclude from the record that the district court considered it.

Estrada-Mederos argued for a below-guideline sentence for three reasons: first, the government's delay in charging made him ineligible for a sentence concurrent with a sentence from a state conviction and failed to give him credit for time spent in immigration detention; second, the 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A) is unfairly severe for the illegal reentry of a defendant who has a drug trafficking conviction; third, Estrada-Mederos will face unusual hardships because he is a deportable alien, which is of course true of anyone convicted of illegal reentry. The district court imposed a guideline sentence with only the tersest explanation.

The defendant's second and third arguments did not require explicit comment by the district court. Both arguments failed to address the defendant's individual circumstances. They were in effect blanket challenges to the applicable Guidelines. While a district court certainly has discretion to consider such challenges to the Sentencing Commission's policy choices, a court can reject them without addressing them expressly when explaining its sentence. E.g., *United States v. Schmitz*, 717 F.3d 536, 542 (7th Cir. 2013) (collecting cases); *United States v. Ramirez-Fuentes*, 703 F.3d 1038, 1047–48 (7th Cir. 2013) (status as deportable alien); *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009) (status as deportable alien); *United*

*States v. Aguilar-Huerta*, 576 F.3d 365, 367–68 (7th Cir. 2009) (16-level increase for illegal reentry after aggravated felony). We say no more about these arguments.

Much stronger, however, is defendant's first argument, that the court should have reduced his sentence because the delay in charging him effectively denied him the ability to receive credit toward his federal criminal sentence for the months he spent in state custody and then in federal immigration custody. The district court was not required to accept this argument, but it was required at least to address it. We vacate defendant's sentence and remand for resentencing.

I.  *Factual and Procedural Background*

    A.  *Defendant's Detention*

Defendant's detention before he was charged and taken into federal criminal custody is central to his argument for a lower sentence. In November 2011, defendant was arrested in Waukegan, Illinois, by local police. While he was in state custody shortly after his arrest, he was told by a federal Immigration and Customs Enforcement agent that ICE had placed "a hold" on him (likely a federal immigration detainer, DHS Form I-247). If he posted bail, he would be seized by ICE and taken into immigration detention. He was in pretrial detention on the state charges until October 2012, when he was convicted on a state obstruction of justice charge. The state court imposed a sentence of two years in prison. He remained in state custody serving that sentence until he was paroled on April 8, 2013, meaning that he was detained by the state for approximately 17 months.

On April 8, 2013, defendant was taken into custody by ICE and was detained while his immigration case was adjudicated. Defendant sought asylum, withholding of removal, and relief under the Convention Against Torture. On September 19, 2013, the immigration judge denied him relief and ordered his removal. Defendant appealed that decision but later withdrew his appeal.

Then, on October 17, 2013, defendant was indicted for illegal reentry in violation of 8 U.S.C. § 1326. He was taken into federal criminal custody for the illegal reentry charge on October 24, 2013. He had been in immigration detention for just over six months.

B.  *Defendant's Sentencing*

On January 9, 2014, Estrada-Mederos pled guilty to the illegal reentry charge pursuant to a plea agreement. The presentence report found that the sentencing guideline range was 57 to 71 months of imprisonment, and the parties agree with that calculation.

Estrada-Mederos argued that a below-guideline sentence would be appropriate because the government's delay in charging him with illegal reentry had the effect of extending his federal criminal sentence. He argued that federal authorities knew he was in the United States as early as November 2011 and certainly no later than October 18, 2012. Yet he was not indicted for illegal reentry until October 17, 2013. Both portions of the delay could be important for sentencing. If defendant had been sentenced before his state custody had expired, at least a portion of the federal illegal reentry sentence could have been concurrent to his state sentence. See U.S.S.G.

§ 5G1.3(c). The federal delay in charging made a concurrent sentence impossible. Defendant also argued that his sentence should be below the guideline range because he would not receive credit for the time served in immigration custody.

Estrada-Mederos presented this delay argument sufficiently to the district court, and the government does not argue that he forfeited any of his arguments or otherwise failed to present them adequately. Three pages of his sentencing memorandum focused on the delay in charging him. Most of the discussion emphasized the lost opportunity to receive a partially concurrent sentence, but he also made the point that "the fact that he will receive no credit for the time spent in state custody or ICE custody prior to the indictment in this case . . . should be considered by this Court in arriving at a just sentence." Sentencing Mem. 16. At the sentencing hearing, his counsel presented the delay-in-charging issue by explaining that ICE was aware of his presence in the United States by November of 2011, when an ICE agent came to visit him in jail. His counsel argued that "he has been in custody since November of 2011 consistently. … So we ask the Court to consider giving him time served from the time he had been in custody in 2011, which is roughly two years." Tr. 8–9. Those two years included the six months in immigration detention, as was also clear from the presentence report.

The government objected to a sentence below the guideline range based on the delay in charging because the factual bases for the state and federal crimes were unrelated. The government also contended that it was

aware of defendant's presence in the United States no earlier than October 2012.

After hearing from Estrada-Mederos himself, the district court announced the sentence:

> There are a number of factors that push the determination in favor of the defendant for a lower sentence and also away from the defendant for a higher sentence. The fact that this is a recidivist crime, the fact that Mr. Estrada-Mederos has engaged in other criminal activity, of course, is not in his favor. But the guidelines, considering the various factors, including the 16-point enhancement, do provide for guidance that the Court believes is appropriate.
>
> And so pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that Defendant Marcos Estrada-Mederos is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 57 months on Count 1.

Tr. 15–16. After the sentence was announced, Estrada-Mederos asked the court if he would get any credit for time served. The judge responded:

> The Bureau of Prisons actually makes that determination. It's not my determination to make. And although that was something that I considered in going to the low end of the guideline range—because, frankly, there were factors that would indicate a higher sentence should be imposed. The fact that you have been in custo-

dy on other charges is something I did take into account. But the Bureau of Prisons will actually make the determination as to what amount of time should be credited towards this sentence, and that will be the Bureau of Prisons' determination. It's not mine. It's not a judicial officer's determination.

Tr. 18.

II. *Analysis*

Defendant Estrada-Mederos argues that the district court made a procedural error in sentencing by failing to address an important mitigation argument based on the delay in filing the federal criminal charge. We review *de novo* claims of procedural error in sentencing. *United States v. Johnson*, 643 F.3d 545, 549 (7th Cir. 2011).

In the post-*Booker* regime of advisory Sentencing Guidelines, a district court ordinarily has wide discretion in sentencing. Yet the sentencing judge must provide an explanation that shows an appellate court that "he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007); see also 18 U.S.C. § 3553(a) (listing factors to be considered in imposing a sentence). The district court is "required to 'adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *United States v. Washington*, 739 F.3d 1080, 1081 (7th Cir. 2014), quoting *Gall v. United States*, 552 U.S. 38, 50 (2007). "A judge who fails to mention a ground of recognized legal merit (provided it has a fac-

tual basis) is likely to have committed an error or over-sight." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). The district court needs to address only arguments from the defendant that are "not so weak as not to merit discussion." *Id*.

In reviewing for this sort of procedural error, "we try to take careful note of context and the practical realities of a sentencing hearing." *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010). The requirement that a district judge address a defendant's principal mitigating arguments "does not apply mechanically." *United States v. Poetz*, 582 F.3d 835, 839 (7th Cir. 2009). We examine the "totality of the record," *id.*, to see if the district judge meaningfully considered the defendant's principal mitigating arguments. *United States v. Castaldi*, 743 F.3d 589, 595 (7th Cir. 2014). A district court need not spend time addressing an argument "if anyone acquainted with the facts would have known without being told why the judge had not accepted the argument." *Cunningham*, 429 F.3d at 679.

We and other circuits recognize the potential merit of a defendant's argument that a delay in charging calls for a lower federal sentence when the delay deprived the defendant of the opportunity to serve a federal sentence concurrent with a state sentence. *United States v. Villegas-Miranda*, 579 F.3d 798, 802–803 (7th Cir. 2009); accord, *United States v. Barrera-Saucedo*, 385 F.3d 533, 537 (5th Cir. 2004); *United States v. Sanchez-Rodriguez*, 161 F.3d 556, 564 (9th Cir. 1998) (en banc); *United States v. Los Santos*, 283 F.3d 422, 428–29 (2d Cir. 2002); *United States v. Saldana*, 109 F.3d 100, 104 (1st Cir. 1997). Potential merit does not

mean the sentencing court must accept the argument, but it ordinarily will deserve explicit comment.

This case presents an added dimension because this defendant was also held in immigration detention after the federal government discovered him and before he was charged and taken into criminal custody. Defendant's argument for a below-guideline sentence because of his immigration detention also has potential merit. Immigration detention, like state incarceration, is a period of confinement that will not be credited toward defendant's federal sentence. Though the immigration custody is civil detention and the state custody is criminal incarceration, the similarities are too strong to ignore. See Anil Kalhan, *Rethinking Immigration Detention*, 110 Colum. L. Rev. Sidebar 42 (2010) (discussing the convergence of immigration detention and criminal incarceration).[1]

Estrada-Mederos' argument for a below-guideline sentence also has potential merit because he will not receive credit toward his federal sentence for the six months he spent in immigration detention. The Bureau of Prisons awards credit toward a federal sentence only for

---

[1] In fact, many immigration detainees are housed in county jails alongside state criminal detainees and subject to the same conditions of confinement. See Kalhan, *Rethinking Immigration Detention*, at 47; see also Dora Schriro, *Immigration Detention Overview and Recommendations*, Dep't of Homeland Security 4 (Oct. 6, 2009) ("With only a few exceptions, the facilities that ICE uses to detain aliens were originally built, and currently operate, as jails and prisons to confine pretrial and sentenced felons."); César Cuauhtémoc García Hernández, *Immigration Detention as Punishment*, 61 UCLA L. Rev. 1346, 1384 (2014) (discussing similarities between the conditions of immigration and criminal detention).

"official detention" as a result of the offense of conviction
or as a result of any other charge for which the defendant
was arrested after commission of the offense of convic-
tion. 18 U.S.C. § 3585(b). "Official detention" means de-
tention by the Bureau of Prisons in a facility where the
defendant is "completely subject to BOP's control." *Reno
v. Koray*, 515 U.S. 50, 63 (1995) (holding that residence in
community treatment center where defendant was con-
fined pending trial was not official detention). The Bu-
reau of Prisons instructs its officers: "Official detention
does not include time spent in the custody of [ICE] …
pending a final determination of deportability." U.S.
Dep't of Justice, Federal Bureau of Prisons, Program
Statement No. 5880.28, Change Notice Sentence Compu-
tation Manual 1-15A (1997).

District courts have routinely deferred to the Bureau
when the decision to deny credit for immigration deten-
tion has been challenged. See *De Paz-Salvador v. Holt*, No.
3:10-CV-2668, 2011 WL 3876413, at *5 (M.D. Pa. Mar. 1,
2011) (courts "uniformly agree" that immigration deten-
tion pending removal is not time in official detention that
must be credited against a federal sentence), *adopted by*
2011 WL 3876268 (M.D. Pa. Aug. 31, 2011); *United States v.
Acosta-Leal*, No. 10-30036-DRH, 2010 WL 4608477, at *2
(S.D. Ill. Nov. 5, 2010) (relying on program statement to
conclude that Bureau was right to deny credit for immi-
gration detention); *Alba-Tovar v. United States*, No. 05-
1899-JO, 2006 WL 2792677, at *2 (D. Or. Sept. 22, 2006)
(same).

In light of these circumstances, a district court could
reasonably find that such uncredited confinement war-

rants a reduced federal criminal sentence. *United States v. Montez-Gaviria*, 163 F.3d 697, 702 (2d Cir. 1998) (uncredited time spent in state custody on an immigration detainer provided sound basis for downward departure); *United States v. Ogbondah*, 16 F.3d 498, 501 (2d Cir. 1994) (same for uncredited time spent in federal immigration custody). The defendant in this case made this potentially meritorious argument, so the district court needed to address the argument in explaining the sentence.

The government argues that the judge addressed defendant's argument in two ways: first, by implicitly rejecting it in announcing the sentence, and second, in responding to defendant's later question about receiving credit. But neither comment by the district judge provided sufficient explanation to show that he considered the argument and had a reasoned basis for rejecting it.

It is true that we have sometimes affirmed a sentence where the district court failed to address explicitly a meritorious mitigating argument because the court gave a reasoned explanation of the sentence that implicitly rejected the argument. See *United States v. Spiller*, 732 F.3d 767, 769–70 (7th Cir. 2013); *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010); *Poetz*, 582 F.3d at 837–40. For example, in *Poetz* the defendant argued that the judge had failed to address the argument for home confinement because incarceration would prevent the defendant from taking care of her family. 582 F.3d at 838–39. The district judge had not explicitly addressed that argument but mentioned the defendant's family several times and acknowledged the family's medical issues. The judge concluded that some period of incarceration was never-

theless required to hold the defendant accountable for her crime. The judge imposed a below-guideline sentence. We upheld the sentence despite the judge's failure to address the home confinement argument explicitly because the totality of the record showed that the judge had considered the argument and rejected it. *Id*. at 839.

In this case, by contrast, the district court's brief explanation for the sentence resembles the explanation that we found inadequate in *United States v. Washington*. 739 F.3d 1080 (7th Cir. 2014). In *Washington*, the district court imposed a sentence at the low end of the guideline range, but offered no explanation for the sentence beyond noting that dealing and using drugs is a "serious crime." *Id*. at 1081. We reversed and remanded for resentencing because "the court's terse remarks do not reflect 'an individualized assessment based on the facts presented,' *Gall*, 552 U.S. at 50; the record is simply too thin for meaningful review." *Id*. at 1082.

As in *Washington*, the judge's terse explanation for Estrada-Mederos' sentence did not reflect an individualized assessment of the defendant. Apart from saying the guideline range was appropriate, the judge said only that Estrada-Mederos had committed other crimes and that this offense is a recidivist crime. Those points provide no insight into the reasons for an individual sentence under 8 U.S.C. § 1326 because they apply to all such cases. The guideline calculation already included the 16-level increase for the prior aggravated felony. The judge's general comment was not enough to show that he had a reasoned basis for exercising his discretion. See *Rita*, 551 U.S. at 356.

A few moments after the court announced the sentence, in response to Estrada-Mederos' question about credit for time served, the court also said that the Bureau of Prisons determines credit for time served and then added "that was something that I considered in going to the low end of the guideline range … . The fact that you have been in custody on other charges is something I did take into account."

This comment does not persuade us that the court adequately considered the potentially meritorious argument that the delay in charging defendant deprived him of the opportunity to serve a partially concurrent sentence and resulted in confinement during immigration detention that cannot be credited toward his federal sentence. Estrada-Mederos spent a total of 12 to 23 months in state custody and immigration detention after he was discovered but before he was charged (depending on when the government discovered him—a contested issue at the sentencing hearing that was not resolved). The court's vague reference to custody on other charges is not enough to show meaningful consideration of this potentially meritorious argument, and the court's comment did not acknowledge at all the time spent in immigration detention. Without more of an explanation from the district court, we are not satisfied that this was a reasoned exercise of discretion, so we must remand for resentencing. *Cunningham*, 429 F.3d at 679.

We VACATE Estrada-Mederos' sentence and REMAND for the district court to consider his argument for a lower sentence because of the delay in charging him.