In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 15-1779

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUSTIN HANCOCK,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 217 — **Virginia M. Kendall**, *Judge.*

---

ARGUED DECEMBER 8, 2015 — DECIDED JUNE 3, 2016

---

Before WOOD, *Chief Judge*, and BAUER and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Justin Hancock was sentenced to 120 months in prison for distributing child pornography. He appeals his sentence on procedural grounds, arguing that the district judge inadequately addressed his arguments be-

fore imposing his sentence. We disagree. Because the judge adequately addressed Hancock's arguments, we affirm.

## I. BACKGROUND

In January 2012, an undercover law-enforcement agent connected with Justin Hancock using peer-to-peer software. Hancock had been using the software for about eighteen months to download child pornography. Hancock granted access to his files and shared his password, allowing the agent to download child pornography from Hancock's computer.

Hancock pled guilty to knowingly transporting child pornography. *See* 18 U.S.C. § 2252A(a)(1). He admitted that he had about 1200 videos and 16,000 images of child pornography, many of which "were graphic in nature and involved sexual acts, including sexual intercourse, with prepubescent children." His plea agreement specifically mentioned images and videos of prepubescent females performing oral sex on, or being vaginally or anally raped by, adult males.

The parties agree that the Sentencing Guidelines recommended a sentence between 151 and 188 months. Specifically, Hancock falls within criminal history category I and his offense level is 34, calculated as follows:

- Base offense level 22. U.S.S.G. § 2G2.2(a)(2).

- Offense-level increases:

  o 2 levels because the material involved prepubescent minors. U.S.S.G. § 2G2.2(b)(2).

  o 2 levels because Hancock distributed material. U.S.S.G. § 2G2.2(b)(3)(F).

- o 4 levels because the material portrayed violence or sadistic or masochistic conduct. U.S.S.G. § 2G2.2(b)(4).

- o 2 levels because Hancock used a computer. U.S.S.G. § 2G2.2(b)(6).

- o 5 levels because Hancock had more than 600 images. U.S.S.G. § 2G2.2(b)(7)(D).

- Offense-level reductions:

- o 2 levels because Hancock accepted responsibility. U.S.S.G. § 3E1.1(a).

- o 1 level because Hancock timely pled guilty, allowing the prosecution and court to save resources. U.S.S.G. § 3E1.1(b).

Hancock argued for a sentence of 60 months—less than half of the low end of the Guidelines range. His principal argument was that the child-pornography Guidelines were "seriously flawed." His argument hinged on the undisputed fact that technological advances have changed the practicalities of child-pornography receipt and distribution. Hancock argued, with factual support, that because of those technological advances, many offense-level increases prescribed by the Guidelines apply to the vast majority of offenders, even those whose conduct is typical, rather than unusually harmful. As a result, he argued, the Guidelines improperly prescribe one-size-fits-all sentences for child-pornography offenders, despite their varying levels of culpability and dangerousness. Hancock also provided the district court with information about the sentences of seven other child-pornography offenders, and urged the court to impose a sentence that avoided an unwarranted sentencing disparity.

The district court imposed a sentence of 120 months. On appeal, Hancock argues that the judge inadequately addressed his sentencing arguments.

## II. ANALYSIS

### A. Standard of Review and Legal Standard

"At the outset of the sentencing proceedings, the district court must determine the applicable Guidelines range … . The court then entertains the parties' arguments regarding an appropriate sentence, including whether the sentence should be within the Guidelines range or not." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016). The district judge must "provide an explanation" that: (1) "shows an appellate court that [the judge] has considered the parties' arguments and has a reasoned basis for exercising [his or her] own legal decisionmaking authority"; (2) "allow[s] for meaningful appellate review"; and (3) "promote[s] the perception of fair sentencing." *United States v. Estrada-Mederos*, 784 F.3d 1086, 1090 (7th Cir. 2015) (internal citations and quotation marks omitted).

District judges need only address arguments that are "not so weak as not to merit discussion." *Id*. Furthermore, the requirement that the judge address the defendant's arguments "does not apply mechanically. We examine the totality of the record, to see if the district judge meaningfully considered the defendant's principal mitigating arguments." *Id*. at 1091 (internal citations and quotation marks omitted). Whether the judge did so is a question we review de novo. *Id*. at 1090.

## B. Hancock Did Not Waive His Argument

Before we discuss the merits, we must address the government's contention that Hancock waived his current argument. In *United States v. Garcia–Segura*, 717 F.3d 566 (7th Cir. 2013), we encouraged district judges to explicitly ask whether the defendant's arguments had been adequately addressed:

> In order to ensure that defendants feel that they have had such arguments in mitigation addressed by the court and to aid appellate review, after imposing sentence but before advising the defendant of his right to appeal, we encourage sentencing courts to inquire of defense counsel whether they are satisfied that the court has addressed their main arguments in mitigation. *If the response is in the affirmative, a later challenge for failure to address a principal mitigation argument … would be considered waived.* If not, the trial court would have the opportunity to clarify whether it determined that the argument was so weak as not to merit discussion, lacked a factual basis, or has rejected the argument and provide a reason why.

*Id*. at 569 (emphasis added) (internal citation and quotation marks omitted).

In this case, after the district judge specified the sentence that would be imposed, she asked, "Anything further?" In response, Hancock's attorney made three logistical recommendations, but said nothing about the judge having inadequately addressed Hancock's sentencing arguments. Relying

on *Garcia–Segura*, the government argues that Hancock waived his current argument. We disagree.

"Waiver requires a defendant to intentionally surrender a known right." *United States v. Speed*, 811 F.3d 854, 857 (7th Cir. 2016). As we have previously explained, a non-specific question like "Anything else?" does not direct the defendant to any specific issue, so a negative answer does not intentionally surrender a known right. *United States v. Morris*, 775 F.3d 882, 885–86 (7th Cir. 2015) ("In this case, the district court's generic inquiry of 'anything further?' did not serve the specific purpose we had in mind in *Garcia-Segura*."); *see also Speed*, 811 F.3d at 857 ("[W]e never intended [in *Garcia-Segura*] to imply that a general 'anything else?' results in the waiver of a specific right."). So there was no waiver here. As we did in *Morris*, "[w]e again encourage courts to ask defense counsel 'whether they are satisfied that the court has addressed their main arguments in mitigation.'" 775 F.3d at 886 (citing *Garcia-Segura*, 717 F.3d at 569). This inquiry should be a part of every sentencing hearing.

## C. District Judge Adequately Addressed Hancock's Arguments

### 1. Factors Relevant to Non-Production Child-Pornography Offenses

Hancock's primary sentencing argument was that the Guidelines' offense-level increases for receipt, transport, possession, or distribution of child-pornography, fit poorly with modern practical realities. Because today most such crimes are committed with Internet-connected computers, amassing or distributing a huge and diverse collection is fast and easy. The result is that many offense-level increases ap-

ply to the vast majority of offenders. So, Hancock argued, the offense-level increases fail to account for offenders' varying levels of culpability and dangerousness. In particular, Hancock complained about the increases for using a computer, possessing more than 600 images, possessing images of prepubescent minors, and possessing images depicting violence or sadistic or masochistic conduct. On appeal, Hancock says the district judge failed to adequately address this argument.

That argument has at least two flaws. The first is that the argument is not individualized to the facts of Hancock's case. It is a blanket attack against the Guidelines' policy. We have held that district judges—who, recall, are *required* to begin the sentencing process by correctly calculating the Guidelines range—need not even *consider* such an argument. *United States v. Schmitz*, 717 F.3d 536, 542 (7th Cir. 2013) ("[B]ecause an argument like Schmitz's is a blanket challenge to the guideline rather than one tailored to his unique characteristics and circumstances, it is not one that the district judge must explicitly address."). A district court *may* address such an argument, and may find it persuasive, "but if it is not persuaded by the argument it may pass over it in silence." *Id*.; *see also United States v. Aguilar-Huerta*, 576 F.3d 365, 367–68 (7th Cir. 2009). In other words, the district judge was "perfectly entitled to accept the penal philosophy embodied in the current [child-pornography] guideline and was not obligated to explain why she chose to do so." *Schmitz*, 717 F.3d at 542.[1]

---

[1] Hancock notes that the Sentencing Commission itself issued a report in 2012 that questioned the wisdom of the child-pornography Guidelines. At most, that supports the inference that Hancock's policy

The second flaw in Hancock's argument is that the judge *did* consider and comment on his arguments.[2] Indeed, to some extent, the judge *accepted* Hancock's arguments and his view of the evidence. For example, as urged by Hancock's lawyer, the judge found no evidence that Hancock had ever molested a child, told someone to molest a child, told someone to produce child pornography, or sought "validation" of his behavior from other offenders. The judge also accepted Hancock's argument that a relevant consideration is the extent to which an offender's collection is or is not carefully categorized (a factor not mentioned by the Guidelines). Indeed, the judge found that the relative lack of categorization of Hancock's collection mitigated in favor of a lesser sentence.

---

argument was *good*; but it was nonetheless a blanket policy argument on which the court was not required to speak. We also note that the Guidelines have been amended several times since the report issued, without a relevant change.

[2] As the government concedes, the judge did not explicitly say anything about § 2G2.2(b)(6)'s two-point increase for the use of a computer. But as discussed above, she was not required to. We also note that the Sentencing Commission report that Hancock repeatedly cites in support of his view that the majority of child-pornography offenses are committed using Internet-connected computers states that "the perpetual nature of the distribution of images on the Internet causes a significant, separate, and continuing harm to victims" and that "[o]nce an image is distributed via the Internet, it is impossible to eradicate all copies of it or to control access to it. The harm to victims is thus lifelong." U.S. Sentencing Commission, *Report to the Congress: Federal Child Pornography Offenses* 311 (2012), available at www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Chapter_12.pdf. The victim impact statements in Hancock's case reflect the same view.

Hancock made additional arguments, which the judge considered, but ultimately rejected. He pressed that the number of images that an offender possesses is irrelevant because a large collection is so easily and quickly amassed. The judge explicitly considered the argument but rejected it as unsupported by the facts of Hancock's case:

> I know that the volume has been labeled by [Hancock's attorney] as being actually a factor that we shouldn't take into account because of the ease at which it can be gathered. And I think that's probably an argument that it's possible. No evidence has been presented to me that that's what occurred here, that there was like a quick download that was maintained.

The judge did not reject the possibility that some *other* defendant might make a meritorious argument along these lines, but she found no facts from which *Hancock* could do so. (Indeed, Hancock admitted he had been viewing child pornography for at least twelve years and had been seriously collecting it for at least a year and a half.)

Hancock also argued that his possession of particularly heinous images should not be an aggravating factor because many offenders possess such images and his own possession of them was "incidental" to his downloading of images he actually enjoyed (adult females with prepubescent children, which he implicitly argues are less heinous). The judge addressed the argument, noting that Hancock wanted to "mitigate the aspect that the images were sadistic or of younger children" on the ground that many offenders possess such images. But the judge found it aggravating that Hancock would "want to have near [him]" images of very young chil-

dren being molested and raped, even if those images were not his specific focus.[3] So the judge considered Hancock's argument, but disagreed, as she was entitled to do. *Cf. United States v. Stinefast*, 724 F.3d 925, 931–32 (7th Cir. 2013) (affirming sentence where "court's discussion, while brief, reflects its consideration and rejection" of the defendant's arguments); *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010) (noting "the fact that the district court *acknowledged* [the defendant's] argument is dispositive" because "as long as a sentencing court considers the arguments made in mitigation, even if implicitly and imprecisely," no procedural error occurs) (emphasis added).

Those examples suffice. Hancock argues that the district judge inadequately considered his argument about what factors should aggravate or mitigate a non-production child-pornography sentence. But a careful review of the sentencing transcript defeats his argument.

## 2. Unwarranted Sentencing Disparities

Hancock's second argument concerned unwarranted sentencing disparities. In his sentencing brief, he identified six child-pornography offenders who had been recently sentenced, and at the hearing, he identified a seventh. He argued that the judge should avoid an unwarranted sentencing disparity, but his argument was not much more specific

---

[3] Hancock's lawyer described image collection this way: "You download [a] folder. And then you get all those images. Whether you want them all or not, you get them all. And then *you throw out the ones you [don't] want* and you look at the ones that excite you" (emphasis added). But as the government pointed out, Hancock did not "throw out" the particularly heinous images.

than that. The offenders Hancock identified received varying sentences—between 60 and 180 months—because the facts of their individual cases varied. Even to date, Hancock has not identified an offender or group of offenders who received more lenient sentences than he did despite similar or more serious conduct.

Hancock's lawyer acknowledged the lack of precision, stating during the hearing that the comparison was "not scientific" and that the court could not devise any guidelines "from just looking at six cases." He conceded that his analysis revealed "no discernible pattern as to how the judges of this district are dealing with the cases." Hancock's sentencing brief also noted the lack of a clear pattern, and urged only that the comparisons "provid[e] some information that may be of assistance" to the district court. That is hardly a "principal argument in mitigation" that the district court was required to address. *United States v. Castaldi*, 743 F.3d 589, 598 (7th Cir. 2014) ("Castaldi cannot prove that his sentence is unfair by pointing to a few other cases around the country where similar or worse defendants received lighter sentences, and this was not such a major part of his sentencing position as to trigger special obligations to explain … ."); *United States v. Martinez*, 650 F.3d 667, 672 (7th Cir. 2011) ("The key word, however, is principal—non-principal arguments can be considered and rejected by the district court without explicit discussion."); *United States v. Martinez*, 520 F.3d 749, 753 (7th Cir. 2008). Hancock's sentence was substantially below the low end of his Guidelines range, and it fell right in the middle of the range of sentences imposed on the offenders he identified. The district judge committed no error by not explaining why Hancock's sentence did not cre-

ate an unwarranted disparity with the sentence(s) of (one or more of) those offenders.

### III. CONCLUSION

We AFFIRM the judgment of the district court.